17  133
67  557

## RICE *v.* PORTER.

P. and J. owing a joint debt, J, in consequence of P.'s request to provide for the payment of his part, indorsed and delivered to P. the note of a third party, and afterwards paid him a sum of money sufficient, with the amount due on the note, to pay J.'s part of the debt; and P. paid it. *Held*, that these facts did not preclude the jury from finding that the note was, after its delivery, the property of P., and not held by him as collateral security ; although he did not in express terms agree to discharge so much of J.'s debt.

ASSUMPSIT, upon a promissory note signed by Porter for $500, dated December 26, 1837, and made payable to one Charles B. Johnson, or order, on the 1st of September, 1839, with interest. The defendant pleaded the general issue, with a notice that he would offer as a set-off the notes of Charles B. Johnson, dated the same 26th day of December, for $500, and payable to him, with interest, on the said 1st of September, 1839 ; and several other notes, signed by Johnson and payable to Porter, to the amount of $4,000. The signatures of Porter and of Charles B. Johnson and Joseph L. Locke, indorsers of the note, were admitted or proved. The defendant offered the deposition of said Charles B. Johnson, who testified that in 1835 he and others bought timber land of Messrs. Boyds, and gave his note, with Jas. Pickering, in part payment; that a suit was commenced on the note, and property of Pickering was attached ; that he met Pickering in Portsmouth very soon after the attachment, who then told him that the note was sued and his vessel attached, and asked him if he could get the money to pay his part of it; said he wanted to have it settled immediately; that he did not want to have his vessel attached, and that he (Johnson) must get the money to pay his part of it; that he told Pickering that he had not the money, and could not get it at that time ; told him he had some good notes which he would turn out, and that was the best he could do for

him; that he had (among others) Huntington Porter's note for $500, being the note in suit, which he would let him have, and he thought he could get the cash for it. Pickering, remarked that that would not be enough to pay the witness's part. The witness told him that he would get the money to pay the balance as soon as he could; that he indorsed the note, and handed it to him; that he did not recollect taking a receipt, though it was his general habit to do so when he left notes as collateral security; that said Pickering did not, as he recollects, give him any memorandum or agreement to pay the whole debt, to the Boyds, or that he would assume the whole debt; but he thought he gave him minutes of the balance which he had still to pay beside the Porter note, in order to complete his half of the Boyd note. Being enquired of whether or not he indorsed the Porter note to Pickering, to indemnify him against any payments which he might be compelled to make, as signer with him on the Boyd note, the witness answered that he gave it to him instead of the money, which he was unable to procure. On cross-examination he testified, that he at different times paid Pickering the difference between the Porter note and the amount of his half of the Boyd note.

The defendant proved the execution of the notes mentioned in the set-off. The plaintiff called as a witness James Pickering, who testified that the note in suit was negotiated to him, as he thought, in April, 1838; that the note given by him and Charles B. Johnson, to the Boyds, had been sued, and the witness's vessel, then ready for sea, had been attached; that he met Johnson in the street and wanted him to pay his part of the Boyd debt; that Johnson said he had no money, but had notes, and showed him several notes, of which the witness preferred the note now in suit; that Johnson told him he could raise the money on this note at any time; that Johnson afterwards paid him the balance, to make up his part of the Boyd notes, in

Rice *v.* Porter.

two payments, and he afterwards paid the Boyd debt; that in the winter of 1842–3 (he having paid the Boyd debt in 1839, in the summer, as he thought), he sold the note in suit to Joseph L. Locke for money and wood; that there was no other writing passed between himself and Johnson, and no conversation or agreement, so far as he recollects, except what he before stated. A verdict was returned for the plaintiff for the amount due on the note declared upon. The defendant moved that the verdict be set aside and a new trial granted. 1. Because the court, though requested by the defendant's counsel, declined to charge the jury "that if Pickering received the note in suit, or the note and money, to pay over for Johnson to Boyd, Pickering not agreeing to assume the payment of Boyd's debt, the transfer could not be considered as absolute." 2. Because the court charged the jury, in substance, that if Johnson, after passing the note in suit to Pickering, had an interest in it, other than that it should go to pay the Boyd debt, then the defendant's set-off would be admissible, but that otherwise it would not be admissible. 3. Because the verdict is against the evidence offered, both on the part of the plaintiff and of the defendant.

*Bell & Tuck*, for the defendant.

*Bartlett & Emery*, for the plaintiff.

WOODS, J. The plaintiff is the holder of a negotiable promissory note, made by the defendant, payable to Johnson; by Johnson indorsed to Pickering, from whom, through some intermediate holders, it has been transmitted to the plaintiff. No question was made at the trial that the note had been thus regularly transmitted, and that such indorsements had actually been made, as appeared upon the paper itself to have been made, and as were necessary and sufficient to entitle the plaintiff to the

possession of the instrument, and to maintain an action upon it in his own name. He comes into court therefore with this *primâ facie* evidence in his favor. He is entitled, moreover, to the presumption accorded, in general, to the holder of a negotiable note or bill, that his right to it, and the right of those through whom he claims, to negotiate and transfer it, is founded upon good legal consideration. And if the defendant would draw in question the right of the plaintiff to maintain his action for his own benefit, he takes upon himself the burden of disproving the facts thus presumed.     2 Greenl. Ev., sec. 172.

The defence set up is, that the indorsement and delivery of the note by Johnson to Pickering was not a negotiation of it in the ordinary course of business, vesting the actual as well as the formal and ostensible property of the note in the indorsee, according to the ordinary and presumed effect of such a transaction, but that it was delivered to him as collateral security, to be used for the benefit of Johnson, its avails to be collected and applied to discharge a debt that Johnson owed a third party, or which he might owe Pickering, upon the event that the latter should pay the debt which Johnson owed.

Now it is clear, that if such were the terms on which the note was passed to Pickering, it still remained in effect the property of Johnson, and neither Pickering, nor any one claiming it under him, with notice of the facts, or after the maturity and dishonor of the paper, which is equivalent to notice, could maintain an action upon it without being liable to be met by any defence which could have been set up against Johnson himself.     *Williams* v. *Little*, 11 N. H. Rep. 66.

What evidence does the defendant exhibit to prove that the note was so specially negotiated? Johnson and Pickering, having a note to pay to the Boyds, Pickering urged Johnson to pay his part, and so quiet a suit that had been commenced to recover the sum due. Johnson had no

Rice *v.* Porter.

money and could get none; but had the note of Huntington Porter, on which he said that Pickering could raise the money. Pickering remarked that the amount of the note was not sufficient, and Johnson replied, that he would get the money and pay the balance as soon as he could; and thereupon indorsed and delivered the note. He gave him the note "as he would have given him money," and as "being the nearest to money of any thing he had."

Pickering received the note without any further comments than have been recited. He did not, in formal terms, promise to pay the Boyds, for Johnson, a sum of money equal to that which was due upon the note that he received. Neither did he, in express terms, promise to pay to them a sum of money equal to the other sums which Johnson paid him to make up his part of the amount due to the Boyds. But he did pay over a sum equal to the amount of the note and the money which he received from Johnson, and treated both the note and the money, so received, as his own.

Upon this evidence the defendant founded a theory, that Pickering received the note and the money to pay over to Boyd, and not as his own; and that he did not undertake, when he received them, to pay to the Boyds their amount in behalf of Johnson; and requested the court to charge the jury, that if they believed such to be the truth, the transfer could not be considered absolute.

There was, in the first place, no evidence whatever that the notes or the money were delivered to Pickering for the purpose of being by him delivered to the Boyds. The instructions moved for were therefore inapplicable to the evidence, and could not have had any influence, unless it might have been to complicate the case, and to mislead the jury. A party has no occasion and no right to frame an hypothesis not founded in the evidence, and to ask for the instructions of the court upon such a supposed state of things.

The same observations might perhaps be applied to the other hypothesis assumed in the defendant's motion ; which was, that Pickering did not undertake to pay the debt of Johnson to the extent of the note and money which he received of him.   It is at least extremely difficult to give any other construction to the evidence than that he did so undertake.   He received the note as men ordinarily receive such paper that is indorsed and delivered to them.   And if he had not undertaken to pay the debt of Johnson, it is difficult to understand why Johnson afterwards paid the balance of the money to Pickering instead of the Boyds.

But without relying particularly upon that point, the instructions called for were properly refused upon another ground.   It is not a necessary or just inference, if Pickering did not assume the debt, that the transfer of the note was not absolute.   He received the note as he did the money, and if, under the circumstances, there was not an implied promise on his part to pay the debt, an action for money had and received would have been maintainable to recover the amount of the whole ; for there is no proof that the note did not become his, as paper negotiated commonly becomes the property of the party receiving it.   So that, although Pickering did not expressly, or even by implication, agree to pay the amount of the note and money for Johnson in the particular manner suggested in the motion, the note, like the money, might well have become the property of Pickering on delivery, and its reception by him might have created an equitable debt to the party of whom he received it.

This debt was afterwards discharged by paying the sum to the Boyds for Johnson.

It was, moreover, of no consequence whether the transfer of the note from Johnson to Pickering was absolute or not at the time of the transfer.   It might well have been conditional, and to become absolute upon the event that

Pickering paid the debt to the Boyds. The evidence goes as far certainly to sustain such a theory, as it does to prove that the note was delivered as collateral security. When he paid the debt it became absolute from the beginning. The first exception must therefore fail.

After Johnson passed the note to Pickering, he had an interest in it, so far as respected his liability as indorser. He had an interest that his debt to the Boyds should be paid by the party to whom he had given the funds for the payment of it. The indorsement and delivery of the note could not divest him of that interest. If he had none beyond that, the transfer of the note was absolute. It is difficult to perceive in what way the instruction which was the subject of the second exception could have produced an effect unfavorable to the defendant.

The evidence has been sufficiently considered. The plaintiff's *primâ facie* case does not appear to have been disproved by any evidence that the note was delivered for any collateral purpose, or out of the ordinary course of the negotiation of commercial paper.

The result is, there must be

*Judgment on the verdict.*